1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID J. PEDERSEN,

                    Plaintiff,

        v.

TRACY SCHNEIDER,

                    Defendant.

CASE NO. 3:21-cv-05121-RSM-BAT

**REPORT AND
RECOMMENDATION**

        Plaintiff, an inmate housed at Washington State Penitentiary (WSP), filed a *pro se* civil

rights complaint under 42 U.S.C. § 1983. Plaintiff alleges his First Amendment rights were

violated by the rejection of an outgoing letter to his fiancée at the time, Loretta Pedersen, on the

grounds that the correspondence was of a "prurient nature." Dkt. 4, at 9-10. Plaintiff names

Tracy Schneider, Correctional Manager at the Washington State Department of Corrections

(DOC), whom he alleges "affirm[ed]" the "censorship" of his letter, as a Defendant. *Id.*

Currently before the Court are Plaintiff's motion for summary judgment (Dkt. 20), Defendants'

cross-motion for summary judgment (Dkt. 22), and Defendants' motion to seal and for a

protective order (Dkt. 25). The Court recommends that Defendant's motion to seal and for a

protective order (Dkt. 25) be GRANTED IN PART and DENIED IN PART. The Court further

recommends that Plaintiff's motion for summary judgment (Dkt. 20) be DENIED, and

REPORT AND RECOMMENDATION - 1

1   Defendants' motion for summary judgment (Dkt. 22) be GRANTED and the case be

2   DISMISSED and closed.

3                                   **BACKGROUND**

4   **A.    Statement of Undisputed Material Facts**

5          Defendant submits evidence of the following facts, which Plaintiff does not dispute,

6   regarding relevant DOC policies, DOC's mail rejection appeal process, and the rejection of

7   Plaintiff's letter to Ms. Pedersen. Dkts. 22, 21.

8          **1.    DOC Restrictions on Sexually Explicit Material**

9          DOC Policy 450.100, Mail for Prison Inmates, sets forth the Department's policy

10  governing mail services for offenders and defines staff responsibility for managing and

11  maintaining the safety and security of the public, staff, offenders, and facilities. Dkt. 21,

12  (Schneider Decl.) at ¶ 3. DOC Policy 450.100(III)(B) states that "mail will be rejected based on

13  legitimate penological interests and per Unauthorized Mail." *Id*. At ¶ 4. Per Attachment 1 –

14  Unauthorized Mail, "[m]ail to or from incarcerated individuals, including publications and

15  eMessages/attachments, may be rejected for any of the following reasons: […] Contains sexually

16  explicit material per WAC 137-48-020, including altered images, strategically placed

17  graphics/items, or airbrushing. Publications, letters, or eMessages that contain significant or

18  repeated instances of content defined per WAC 137-48-020(13)(a)-(b) may be rejected.

19  Publications, letters, or eMessages that contain any content defined per WAC 137-48-

20  202(13)(c)-(d) may be rejected." *Id.* At ¶ 5; *Id*. at Ex. 2.

21         In relevant part, Wash. Admin. Code § 137-48-020(13) provides the following definition

22  of sexually explicit materials in the context of inmate mail:

23         (13) "Sexually explicit materials" consist of any item reasonably deemed to be
           intended for sexual gratification and which displays, portrays, depicts, or
           describes:

REPORT AND RECOMMENDATION - 2

> (a) Nudity, which includes, but is not limited to, exposed/visible
> (in whole or part, including under or through translucent/thin
> materials providing intimate physical detail) genitals/genitalia,
> anus, buttocks and/or female/transgender breast nipple(s);
> (b) A sex act which includes, but is not limited to, genital-genital,
> oral-genital, anal-genital, or oral-anal contact/penetration, genital
> or anal contact/penetration with an inanimate object,
> masturbation, and/or bodily excretory behavior;

Wash. Admin. Code § 137-48-020(13). Dkt. 21, at ¶ 6.

### 2.    DOC's Mail Rejection Appeal Process

As part of their duties, DOC mailroom employees routinely read incoming and outgoing offender mail, other than legal mail, to ensure that it neither violates DOC policy nor creates security and safety concerns for staff, offenders, or the public. Dkt. 21, at ¶ 9. If mail does not meet these requirements, it is rejected and not delivered (if incoming) or sent out (if outgoing). *Id*. Under DOC Policy 450.100, mailroom employees provide written notice to an offender whenever the offender's incoming or outgoing mail is rejected. *Id*., at ¶ 10. Offenders do not need to appeal rejections of outgoing mail as the Superintendent/Designee automatically reviews any rejection of outgoing mail. *Id*.

The Superintendent/Designee reviews the mail rejection and either upholds the rejection or overturns the rejection, allowing delivery of the mail. Dkt. 21, at ¶ 11. The offender is given notice when the Superintendent/Designee upholds or overturns the mail rejection. *Id*. If an outgoing mail rejection is upheld by the Superintendent/Designee, it is automatically submitted for review to the Correctional Manager at DOC Headquarters. *Id*. Offenders do not need to submit a separate appeal for the upheld mail rejection to be submitted to the Correctional Manager at DOC Headquarters, but they may decide to submit appeal documents anyway, in which case the appeal documents are included with the mail rejection. *Id*. The Correctional Manager reviews these second-level mail rejection appeals and affirms or reverses the decision

REPORT AND RECOMMENDATION - 3

of the facility. *Id*. The offender is given notice when the Correctional Manager upholds or rejects the mail rejection. *Id*. At each level, the offender is notified of the decision and the grounds for it. *Id*.

### 3. Rejection of Plaintiff's Letter

On November 16, 2020, Washington State Penitentiary mailroom employee Jennifer Spencer rejected an outgoing letter from Plaintiff to Loretta Pedersen. Dkt. 21, at ¶13. Spencer rejected the letter because it contained sexually explicit material, specifically "written depiction of intercourse and drawn depiction of masturbation." *Id*.

As an outgoing mail rejection, it was automatically forwarded for review to the Superintendent's Designee, Sgt. Derek Dugger. Id., at ¶ 14. Sgt. Dugger reviewed the letter and upheld the rejection, writing, "I concur with the rejection as stated above, mailing does contain sexually explicit writings and a drawing." *Id*. The mail rejection was then forwarded to Headquarters for review, where Defendant Correctional Manager Tracy Schneider upheld the rejection on February 25, 2021. *Id*., at ¶ 15.

## B. Plaintiff's Complaint

In his complaint, Plaintiff alleges his First Amendment rights were violated by the rejection of Plaintiff's outgoing mail "merely on account of its prurient nature." Dkt. 4, at 11. As relief Plaintiff seeks a declaratory judgment stating that:

1) The censorship of Plaintiff's outgoing letter, merely on account of its prurient nature, violated his rights under the First Amendment to the United States Constitution.
2) Defendant Schneider's failure to reverse the censorship decision, and her present possession of Plaintiff's letter to his now-wife, continues to violate Plaintiff's rights under the First Amendment to the United States Constitution.
3) That Washington Administrative Code (W.A.C.) 137-48-040 is unconstitutional to the extent that it authorizes the censorship of outgoing prisoner correspondence for reasons that do not comport with the standard promulgated by the Supreme Court of the United States in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800 (1974), as is any other policy, code, statute, or practice that fails to draw a distinction between incoming and outgoing prisoner correspondence.

Dkt. 4, at 11-12. Plaintiff also seeks whatever nominal damages and punitive damages the Court deems appropriate as well as any other relief deemed appropriate by the Court. *Id.*

## C.    Current Motions

Plaintiff filed a motion for summary judgment arguing that the record shows his First Amendment rights were violated as a matter of law by the "censorship" of his letter. Dkt. 20. Defendant opposes Plaintiff's motion and cross-moves for summary judgment arguing there was no First Amendment violation. Dk. 22. Plaintiff opposes Defendant's cross-motion for summary judgment. Dkts. 33, 35, 36, 37, 38. Defendant also moves to seal and for a protective order with respect to the letter at issue. Dkt. 25. Plaintiff opposes the request to seal arguing that he should have access to the letter in order to properly litigate his case. Dkt. 29. Defendants filed a reply to the motion to seal indicating that Plaintiff had subsequently been afforded the opportunity to view the letter and that therefore the motion should be granted. Dkt. 30.

## DISCUSSION

## A.    Summary Judgment Motions

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

1    Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in

2    the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th

3    Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v.*

4    *County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

5         The party moving for summary judgment has the initial burden to demonstrate no genuine

6    issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In*

7    *re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always

8    bears the initial responsibility of informing the district court of the basis for its motion," and

9    identifying those portions of the record, including pleadings, discovery materials, and affidavits,

10   "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477

11   U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact

12   exists does not preclude summary judgment. *California Architectural Building Products, Inc. v.*

13   *Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which

14   is "relevant to an element of a claim or defense and whose existence might affect the outcome of

15   the suit," and the materiality of which is "determined by the substantive law governing the

16   claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th

17   Cir. 1987).

18         Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

19   grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

20   'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477

21   U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No

22   longer can it be argued that any disagreement about a material issue of fact precludes the use of

23   summary judgment."). In other words, the purpose of summary judgment "is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

1   *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly

2   support an assertion of fact or fails to properly address another party's assertion of fact as

3   required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting

4   materials--including the facts considered undisputed--show that the movant is entitled to it[.]"

5   Fed R. Civ. P. 56(e)(3).

6          Plaintiff alleges his First Amendment rights were violated by the rejection of his outgoing

7   letter on the grounds that it contained sexually explicit material or was of a "prurient" nature.

8   Dkt. 4, 20. In his motion for summary judgment, Plaintiff argues that Defendant "has failed to

9   put forth a legitimate governmental interest that is protected by the restriction of outgoing

10  correspondence, merely on account of the salacious nature of the correspondence." Dkt. 20, at 4.

11  He argues, "[t]he letter that Plaintiff wrote to his then fiancée contained no content whatsoever

12  that could be construed as remotely implicating the safety and security of the institution. Plaintiff

13  did not mention the introduction of illicit substances, weapons, or any other contraband into the

14  facility, nor did he discuss plans to escape. He merely wrote sexually explicit material to the

15  woman who is now his wife." *Id.* Defendant argues in opposition to Plaintiff's motion and in

16  support of his cross-motion for summary judgment that Plaintiff's outgoing letter was obscene

17  and therefore was not protected by the First Amendment. Dkt. 22. Alternatively, Defendant

18  argues that even if Plaintiff's letter was not obscene, the evidence shows there was no First

19  Amendment violation. *Id.*

20         The content of the letter is not in dispute. *See* Dkts. 20, 22, 26. The letter contains a

21  detailed drawing depicting masturbation including excretion of bodily fluids from genitalia, and

22  a brief but graphic description of a sexual act between Plaintiff and the intended recipient. *Id.*

23  The remainder of the letter is not of a sexual nature.

1     "In evaluating the free speech rights of adults, [the United States Supreme Court has]

2     made it perfectly clear that '[s]exual expression which is indecent but not obscene is protected by

3     the First Amendment.'" *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997) (*quoting*

4     *Sable Communications of California, Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989)). Obscene speech,

5     however, is not protected by the First Amendment. *Miller v. California*, 413 U.S. 15, 24 (1973).

6     To determine if speech is obscene, the Court applies the following three part test set forth in

7     *Miller*: (1) whether the average person, applying contemporary community standards would find

8     the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or

9     describes sexual conduct in a patently offensive way according to contemporary community

10    standards; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or

11    scientific value. *Id.*, at 24; *Smith v. U.S.*, 431 U.S. 291, 302 (1977); *Wright v. Van Boening*, 958

12    F.2d 380 (9th Cir. 1992).[1]

13         First, the average person applying contemporary standards, would find Plaintiff's letters

14    appeal to the prurient interest. There is no dispute that the letter contains graphic descriptions of

15    sexual acts Plaintiff indicates he would like to perform with the letter's intended recipient as well

16

17    _____

18    [1] In general, on summary judgment, if the factual content of the material at issue is undisputed, the Court
      should determine if the materials are obscene. *See Wright v. Van Boening*, 958 F.2d 380 (9th Cir. 1992)
      (affirming the district court's finding there was no triable issue of fact for the jury and finding materials in

19    the prison were obscene); *Clark  v. Carter*, 2006 WL 3448689, *6 (W.D. Wash. Nov. 27, 2006) (granting
      summary judgment after finding outgoing letter was obscene and not protected by the First Amendment

20    and finding the mail was subject to censorship due to a penological interest in furthering prison safety and
      security); *Perez v. Warner*, 2016 WL 2894053, *3, n. 3 (W.D. Wash., April 27, 2016) (granting summary
      judgment after finding outgoing letter was obscene and not protected by the First Amendment); *United*

21    *States v. A Motion Picture Film Entitled "Pattern of Evil"*, 304 F. Supp. 197, 201 (S.D.N.Y. 1969) ("As a
      general rule, the presence or absence of such elements pose fact questions to be submitted to a jury.

22    However, the Supreme Court has held that the question of obscenity is ultimately a constitutional
      question and therefore the jury's findings do not have their usual conclusive effect. *See Jacobellis v. Ohio*,

23    378 U.S. 184, 188 (1964); *U.S. v. A Motion Picture Film Entitled 'I Am Curious'*, 404 F.2d 196, 200 (2d
      Cir. 1968). The judge to whom a summary judgment motion is addressed, should, consequently, dismiss
      the complaint if no triable issue of fact is raised on the question of obscenity.").

as a detailed drawing depicting masturbation and excretion of bodily fluids from genitalia. *See* Dkt. 26. While the letter also contains other non-sexual content, this does not serve to negate the graphic sexual content in the letter. Viewed as a whole, the Court concludes the letter meets the first prong of the obscenity test.

Second, the letter depicts and describes sexual conduct in a patently offensive way. The letter briefly but graphically describes Plaintiff engaging in sexual actions with the letter's intended recipient. *See* Dkt. 26. In the letter, Plaintiff uses street slang and vernacular for sexual organs, graphic descriptions of a sexual act, as well as a detailed drawing of masturbation, including a depiction of the excretion of bodily fluids from genitalia, and would be offensive according to contemporary community standards. *See Perez v. Warner*, No. 315CV05530RBLDWC, 2016 WL 2894053, at *4 (W.D. Wash. Apr. 27, 2016), *report and recommendation adopted*, No. C15-5530-RBL-DWC, 2016 WL 2866357 (W.D. Wash. May 17, 2016) (finding outgoing letter from prisoner obscene where it used "street slang and vernacular for sexual organs and his graphic descriptions of sexual acts would be offensive according to contemporary community standards."). While Plaintiff argues the letters were intended to be private and only for his fiancée to view, Plaintiff was aware the letters were subject to inspection and would be read by persons other than the intended recipient. *See* Dkts. 22, 24, 24-1. Thus, prison officials were, by necessity, subjected to the contents in the letters. *See Clark v. Carter*, 2006 WL 3448689, *6 (W.D. Wash. Nov. 27, 2006) (finding letter was offensive, in part, because it was viewed by persons other than the intended recipient when the prison officials were subjected to the contents of the letter by necessity); *accord Perez*, 2016 WL 2894053, at *4. The Court rejects Plaintiff's argument that the letter was not offensive because it was intended to be private and concludes the letter meets the second prong of the obscenity test.

REPORT AND RECOMMENDATION - 9

Third, while the letter also contains other non-sexual content, Plaintiff does not specifically argue that, taken as a whole, it has serious literary, artistic, political, or scientific value. The fact that there is other non-sexual content in the letter does not render it non-obscene as, viewed as a whole, it clearly contains graphic descriptions of sexual acts and a detailed drawing of masturbation, including a depiction of the excretion of bodily fluids from genitalia. The Court concludes that the letter meets the third prong of the obscenity test.

Based on the above findings, the Court concludes Plaintiff's outgoing letter was obscene under the factors set forth under *Miller*. Because the letter is obscene, it is not protected by the First Amendment and Defendant's refusal to deliver the outgoing letter did not violate Plaintiff's First Amendment rights. *See Clark*, 2006 WL 3448689 at *6. Accordingly, the Court recommends that Plaintiff's motion for summary judgment be denied and Defendant's cross-motion for summary judgment be granted as to Plaintiff's claim that his First Amendment rights were violated when Defendant rejected the outgoing letter.

Even if Plaintiff's letter was not obscene, the evidence shows the First Amendment was not violated. The First Amendment protects a prisoner's right to send and receive mail. *Witherow v. Paff,* 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). "However, '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Shakur v. Schriro,* 514 F.3d 878, 884 (9th Cir. 2008) (quoted sources omitted). In *Procunier v. Martinez,* 416 U.S. 396 (1974), the Supreme Court set forth the standard for determining the constitutionality of a regulation restricting outgoing mail.[2] In evaluating prison restrictions on outgoing mail, the relevant inquiry is whether

---

[2] The Court notes that a more deferential standard set forth in *Turner v. Safley,* 482 U.S. 78 (1987) applies when the regulation concerns the censorship of incoming mail. Under *Turner*, interference with prisoner mail must "be reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *see Turner*, 482 U.S. at 89. A four factor test is used to determine if a prison regulation which

a prison's practice furthers "an important or substantial governmental interest unrelated to the suppression of expression[.]" *Martinez*, 416 U.S. at 413; *accord Barrett v. Belleque,* 544 F.3d 1060, 1062 (9th Cir. 2008). "Prison officials ... must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Martinez,* 416 U.S. at 413. Further, the restriction "must be no greater than is necessary or essential to the protection for the particular governmental interest involved." *Id.* However, prison officials do not need to show there is no less restrictive mail policy that could serve the same penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 411 (1989) (explaining *Martinez* should or need not be read as subjecting prison officials to "a strict 'least restrictive means' test"). Rather, "[*Martinez*] require[s] no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest." *Id.*; *accord Witherow,* 52 F.3d at 265.

The Court notes that this Court has previously upheld a challenge to a prior version of DOC Mail Policy 450.100 providing for the rejection of sexually explicit material in outgoing mail. *See Clark*, 2006 WL 3448689, at *7–8. In *Clark*, Defendants presented evidence that the policy decision to reject "sexually explicit" mail that was both incoming and outgoing was made by DOC headquarters because:

> A study was conducted […] to investigate the effects of sexually explicit materials on inmates, volunteers, and staff. Expert psychologists participated in the study and determined that viewing pornographic or sexually explicit material leads to an increase in

---

interferes with prisoner mail is reasonably related to a legitimate penological interest. *Id.*; *Turner*, 482 U.S. at 89-90. The four factors are: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) "whether there are alternative means of exercising the right that remain open to prison inmates;" (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally;" and (4) the "absence of ready alternatives" or, in the alternative, whether the rule at issue is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-90.

1
2
     sexual aggression. That increase in sexual aggression was found to be a threat to the safety and security, for staff, offenders, offender families, and community volunteers.

3
4
     The experts found that there was an increase in sexual aggression, threatening the safety and security of the institution, regardless of whether the inmate received the materials from mail coming into him or he created the materials and sent them out to someone else. Consequently, DOC policy was changed to prohibit offenders from sending or receiving sexually explicit materials.

5
6
7
*Id.* The Court in *Clark* concluded that Defendants had met their burden of showing the regulation furthered a substantial government interest and was generally necessary to that legitimate government interest. *Id*; *Martinez*, 416 U.S. at 413.

8
9
     Here, Defendant asserts in her declaration that:

10
11
12
13
14
15
     Sexually explicit material has long been unauthorized in DOC facilities because of the threat it presents to the safety and security of offenders and staff within the facilities. Sexually explicit material is continually being used as a form of currency in prison, with negotiations taking place between offenders where sexually explicit material is traded among offenders for other products or services. The use of sexually explicit material as currency also leads to the coercion and strong-arming of offenders, with threats made against offenders who will not share sexually explicit material with others. Sexually explicit material also poses a threat to the safety of staff members and other offenders, as offenders' viewing of sexually explicit material leads to increased instances of sexual harassment against offenders and staff, especially female staff. For all of these reasons, sexually explicit material has been deemed to be a threat to the safety and security of DOC facilities, and sexually explicit material is thus prohibited in prison mail by Wash. Admin. Code § 137-48 and DOC Policy 450.100.

16
17
18
Dkt. 24, at 3. The safety and security of prisons is an important goal of prison authorities and the Court affords a significant degree of deference to the expertise of prison officials on this issue. *See, e.g., Thornburgh*, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and

19
20
21
22
that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." (*quoting Martinez*, 416 U.S. at 404-405)). The Court finds that Defendant has met her burden of demonstrating the regulation is designed to further a substantial government

23
interest unrelated to the suppression of expression.

REPORT AND RECOMMENDATION - 12

1     The next question under *Martinez* is whether the regulation is no greater than is necessary

2   or essential to the protection of the particular governmental interest involved. *Martinez*, 416 U.S.

3   at 413. As the Court clarified in *Thornburgh*, the pertinent inquiry under this standard is whether

4   the challenged regulation is "generally necessary" to a legitimate governmental interest.

5   *Thornburgh*, 490 U.S. at 411. Defendant asserts in her declaration that:

6            The problems related to sexually explicit mail, [described above in the previously
             quoted paragraph of Defendant's declaration], stem from offenders having access to
7            sexually explicit material. Thus, in order for the prohibition on sexually explicit material
             to be effective, it must apply both to incoming and outgoing prison mail. Any other type
8            of regulation leads to a double standard. For example, a prohibition on sexually explicit
             material in incoming mail but not outgoing mail would result in any offender found with
9            sexually explicit material being able to claim that the material was simply outgoing mail,
             and thus authorized for the offender's possession until he mailed it out. DOC staff would
10           have no way to confirm if the offender immediately, or ever, placed the sexually explicit
             material in outgoing mail. Thus, the same prohibition on sexually explicit material needs
11           to apply to outgoing mail as applies to incoming mail in order to ensure that offenders do
             not have access to sexually explicit material.

12   Dkt. 24, at 3-4. The Court finds that Defendant has met her burden of demonstrating the

13   regulation is "generally necessary" to a legitimate governmental interest. Defendant explains,

14   logically, in her declaration that in order to effectively manage the threat to safety and security

15   posed by prisoner's possessing sexually explicit materials, the prohibition on these materials

16   must be applied equally to incoming and outgoing mail.

17      Plaintiff, in his supplemental response to Defendant's cross-motion, points out that, in

18   response to his interrogatory questions, Defendant acknowledged she could not personally think

19   of any specific instances where sexually explicit outgoing correspondence was involved in

20   coercion or where a letter written by a prisoner to his wife or fiancée was used as a source of

21   currency. Dkts. 35, 36, 37, 38. However, the fact that Defendant is unable to personally provide

22   specific examples of these particular behaviors with respect to specific pieces of outgoing mail

23   does not, in and of itself, raise a genuine issue of material fact sufficient to preclude summary

1    judgment. The requirement under *Martinez* is that Defendant demonstrate the regulation is

2    "generally necessary" to a legitimate governmental interest. Defendant has presented a

3    declaration explaining that the restriction must be applied to outgoing and incoming mail

4    because the safety and security concerns posed by prisoner's possession of sexually explicit

5    materials exists regardless of whether the material was received through the mail or is ultimately

6    intended to be sent out and that if such material was permitted to be sent out the prisoner could

7    claim that the material was simply outgoing mail, and thus authorized for the offender's

8    possession until he mailed it out. Plaintiff's argument that Defendant could not personally think

9    of a specific instances where sexually explicit outgoing correspondence was involved in coercion

10   or where a letter written by a prisoner to his wife or fiancée was used as a source of currency

11   does not undermine Defendant's assertion of fact with respect to the need for the regulation to

12   prevent the possession of sexually explicit materials within the prison.

13           The Court also notes that in another interrogatory response, (which Plaintiff submits

14   along with his supplemental response to Defendant's motion) Defendant does provide more

15   specific personal factual information regarding the security interest at issue, stating that she has

16   "seen multiple instances of individuals writing their loved ones (whether it be wife, fiancée,

17   girl/boyfriend) on JPay and/or US Mail who reference the fact that they know that staff are

18   reading their mail and have written comments like 'let's see how the Mailroom staff like reading

19   this' and then begin to write extremely sexually explicit material." Dkt. 36, at 3-4. Plaintiff has

20   not come forward with evidence showing a genuine issue of material fact exists as to

21   Defendant's assertions of fact that the regulation furthers a substantial government interest

22   unrelated to suppression of the expression and is "'generally necessary'" to that legitimate

23

REPORT AND RECOMMENDATION - 14

governmental interest. Plaintiff also does not specifically suggest that there are other less

restrictive alternatives available.

In his complaint, Plaintiff also states he is entitled to a declaration that:

> Washington Administrative Code (W.A.C.) 137-48-040 is unconstitutional to the extent
> that it authorizes the censorship of outgoing prisoner correspondence for reasons that do
> not comport with the standard promulgated by the Supreme Court of the United States in
> *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800 (1974), as is any other policy, code,
> statute, or practice that fails to draw a distinction between incoming and outgoing
> prisoner correspondence.

Generally, a facial challenge to a regulation requires the plaintiff to show "that no set of

circumstances exists under which [the regulation] would be valid ... or that the [regulation] lacks

any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal

quotation marks and citations omitted); *see also Jones v. Sinclair*, 2014 WL 8849985, at *6-7

(W.D. Wash. Nov. 18, 2014) (applying *Stevens* to a DOC Policy). On the other hand, an "as-

applied" claim "challenges only one of the rules in a statute, a subset of the statute' applications,

or the application of the statute to a specific factual circumstance." *Hoye v. City of Oakland*, 653

F.3d 835, 857 (9th Cir. 2011) (citations omitted). The Ninth Circuit has held that the difference

between as-applied and facial challenges "lies only in whether all or only some ... subrules (or

fact-specific applications) are being challenged, the substantive legal tests used in the two

challenges are 'invariant.' " *Id.*

As discussed above, Plaintiff has failed to allege facts showing the policy in question is

unconstitutional as applied to his outgoing letter to Ms. Pedersen. To the extent Plaintiff intends

to raise a facial challenge to the regulation in question, contrary to his assertion, the mere fact

that different constitutional standards govern the evaluation of outgoing mail (*Martinez*) and

incoming mail (*Turner*) does not in and of itself render a prison policy that restricts sexually

explicit material in both incoming and outgoing mail under the policy criteria unconstitutional.

REPORT AND RECOMMENDATION - 15

1    Further, Plaintiff has alleged no facts to indicate that the regulation regarding outgoing mail, on

2    its face, violates *Procunier v. Martinez*, 416 U.S. 396 (1974). As discussed above, Defendant has

3    put forth evidence demonstrating the regulation on outgoing mail furthers a substantial

4    government interest and is no greater than is necessary or essential to the protection of that

5    interest. *Martinez*, 416 U.S. at 413. Plaintiff alleges insufficient facts or evidence to rebut

6    Defendant's showing or to indicate that "no set of circumstances exists under which [the

7    regulation] would be valid ... or that the [regulation] lacks any plainly legitimate sweep."

8    *Stevens*, 559 U.S. at 473.

9        The Court notes that in response to Defendant's cross-motion for summary judgment

10   Plaintiff asserts generally for the first time that the terms "significant" and "repeated" are not

11   sufficiently defined in the regulation, thus rendering it unconstitutional. *See* Dkt. 33, at 10-13;

12   Dkt. 24-1 (DOC Policy 450.100(III)(B) Attachment 1 - Unauthorized Mail) (providing that

13   incarcerated individuals are not allowed to send or receive mail that contains "sexually explicit

14   material per WAC 137-48-020, including altered images, strategically placed graphics/items, or

15   airbrushing. Publications, letters, or eMessages that contain *significant* or *repeated* instances of

16   content defined per WAC 137-48-020(13)(a)-(b) may be rejected." (emphasis added)). Federal

17   Rule of Civil Procedure 8(a)(2) requires that the allegations in the complaint give the defendants

18   fair notice of the plaintiff's claims and the facts upon which plaintiff bases the claims. Thus, it is

19   generally improper for a party to assert unpled theories or claims for the first time in response to

20   a motion for summary judgment. *See Navajo Nation v. United States Forest Servs.*, 535 F.3d

21   1058, 1080 (9th Cir. 2008), *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir.

22   2006).

23

Here, Plaintiff's vagueness challenge was not pled in his complaint but is raised for the first time in response to Defendant's motion for summary judgment. Accordingly, the Court should decline to address Plaintiff's vagueness challenge.[3]

The Court also notes that several Courts have analyzed prison policies regulating sexually explicit mail in the past and have upheld the policies against constitutional challenges. *See Thornburgh*, 490 U.S. 401 (applying *Turner* and upholding the validity of a federal prison regulation restricting sexually explicit material in incoming mail); *Bahrampour v. Lampert*, 356 F.3d 969, 979 (9th Cir. 2004) (applying *Turner* and finding prison officials may prohibit receipt of sexually explicit materials in light of concerns about preventing the sexual harassment of prison guards and other inmates); *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999) (applying *Turner* test to find a regulation prohibiting receipt of sexually explicit images in the prison did not unconstitutionally abridge the inmate's First Amendment rights); *Powell v. Riveland*, 991 F.Supp. 1249, 1254 (W.D. Wash. 1997) (finding DOC Policy 450.100 was parallel to the regulation upheld in *Thornburgh* and therefore facially valid); *Grenning v. Klemme*, 34

---

[3] The Court also notes that, even if considered, Plaintiff's vagueness challenge would likely fail on the current record. A party raising a facial challenge to a statute or regulation on vagueness grounds "must demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497 (1982). Furthermore, in the prison context, "[s]ome open-ended quality is essential if a prison is to have any guidelines; it is impossible to foresee all literature that may pose a threat to safety and security." *Borzych v. Frank,* 439 F.3d 388, 392 (7th Cir. 2006). As discussed above, Defendant has put forth evidence demonstrating the regulation on outgoing mail furthers a substantial government interest and is no greater than is necessary or essential to the protection of that interest. *Martinez,* 416 U.S. at 413. On the current record, Plaintiff alleges insufficient facts or evidence to rebut Defendant's showing or to indicate that "the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates,* 455 U.S. at 497. The term "sexually explicit" is defined in great detail in WAC 137-48-020(13)(a)-(b) and thus, on the current record, it appears to the Court that a reasonable person would likely understand what material the regulation prohibits. Wash. Admin. Code § 137-48-020(13). Dkt. 21, at ¶ 6. Further, given the greater flexibility accorded prison officials to ensure order and safety in a prison population, based on the current record, it appears unlikely that the fact that the regulation provides some latitude to prison officials in determining what is "significant" or "repeated" instances of the sexually explicit content described in WAC 137-48-020(13)(a)-(b) would render the regulation void for vagueness, or fail to sufficiently inform the prisoner population as to what material is prohibited.

1  F.Supp.3d 114, 1155 (applying *Turner* and holding "no constitutional right is violated when

2  prison staff refuse to deliver sexually explicit materials to an inmate because it is reasonably

3  related to penological interests"); *Clark*, 2006 WL 3448689 (Applying *Martinez* and holding

4  outgoing sexually explicit mail was "subject to censorship due to penological interest in

5  furthering prison safety and security").

6       Defendant has put forth evidence demonstrating the absence of a constitutional violation.

7  Plaintiff has not alleged facts showing the regulations at issue in this case are unconstitutional

8  either on their face or as applied. Plaintiff fails to meet his burden on his motion for summary

9  judgment and fails to raise a genuine issue of material fact to preclude summary judgment for

10  Defendant. Accordingly, the Court recommends Plaintiff's motion for summary judgment (Dkt.

11  20) be DENIED and Defendant's cross-motion for summary judgment (Dkt. 22) be GRANTED.

12  **B.    Defendant's Motion to Seal and for a Protective Order**

13       Defendant also moves to seal the letter at issue in this case. Dkt. 25. Defendant's motion

14  appears to be premised on concerns regarding Plaintiff's access to the letter in light of

15  Defendant's expressed interest in preventing the threat to institutional security posed by sexually

16  explicit material. *Id.* The Court construes this as a request for a protective order and a request to

17  seal. Plaintiff opposes the motion, arguing that the material should be available to the public and

18  that he should be permitted to view the letter in order to properly respond to Defendants' cross-

19  motion for summary judgment. Dkt. 29. In reply, Defendant indicates Plaintiff has since been

20  provided the opportunity to view the letter. Dkt. 30.

21       Pursuant to Federal Rule of Civil Procedure 26(c)(1), a court may, for good cause, issue

22  an order "to protect a party or person from annoyance, embarrassment, oppression, or undue

23  burden or expense." In light of the security concerns presented by prisoners' possession of

REPORT AND RECOMMENDATION - 18

1   sexually explicit materials, Defendant requests that Plaintiff not be permitted to possess copies of

2   the letter. Defendants represent in their reply that they have now provided Plaintiff with an

3   opportunity to view the letter. Dkt. 30. Defendant's request for a protective order (Dkt. 25)

4   should be GRANTED. In light of Defendant's expressed safety and security concerns, discussed

5   above, and the fact that Plaintiff has now reviewed the letter, the Court should not require

6   Defendant to provide a copy of the document to Plaintiff. Furthermore, the Clerk should be

7   instructed not to provide a copy of the document to the Plaintiff electronically or through any

8   other means.

9            Defendant also requests that the letter submitted to the Court remain under seal and not

10   viewable by the public. Under Local Civil Rule CR 5(g)(1), there is a "strong presumption of

11   public access to the court's files and records which may be overcome only on a compelling

12   showing that the public's right of access is outweighed by the interests of the public and the

13   parties in protecting files, records, or documents from public review."  Defendant makes no such

14   showing with respect to the public and the protective order denying Plaintiff access to physical

15   copies of the document appears sufficient to address Defendant's concern regarding Plaintiff's

16   access to the document. Accordingly, Defendant's request to seal the document on the docket

17   from public view (Dkt. 25)  is DENIED.

## CONCLUSION

19           Based on the foregoing, the Court recommends that Defendant's motion to seal and for a

20   protective order (Dkt. 25) be GRANTED IN PART and DENIED IN PART. Defendant's request

21   for a protective order (Dkt. 25) should be GRANTED and the Court should not require

22   Defendant to provide a copy of the document in question (Dkt. 26) to Plaintiff. Furthermore, the

23   Clerk should be instructed not to provide a copy of the document (Dkt. 26) to the Plaintiff

electronically or through any other means. The remainder of Defendant's motion (Dkt. 25), seeking to seal the document from the public, should be DENIED. The Court further recommends that Plaintiff's motion for summary judgment (Dkt. 20) be DENIED, Defendant's cross-motion for summary judgment (Dkt. 22) be GRANTED and this case be DISMISSED and closed.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **August 31, 2021.** The Clerk should note the matter for **September 3, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 10 pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of August, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20